ELIZABETH AND TRENTON RAILROAD COMPANY et al.

*v.*

TOWNSHIP OF WOODBRIDGE et al.

[Submitted December 7th, 1914.    Decided December 17th, 1914.]

1. There is no law in this state which permits cars operated by a railroad company organized under the General Railroad law, Revision of 1903 (*Comp. Stat. p. 4219*), to be operated over the line of a street railway company organized under the General Street Railway law of 1893 and its supplements and amendments. *Comp. Stat. p. 5021.*

2. The construction of a branch or Y, to connect a railroad organized under the General Railroad law of 1903 with a street railway organized under the General Street Railway law of 1893, is wholly unauthorized by any law of this state, and the presence of its tracks and switches and other constructions in the street, being unauthorized by law, constitute a public nuisance which may be abated by the municipality in which it is located by any lawful means.

---

On final hearing on bill, answer, replication and proofs.

*Mr. Edward A. Armstrong,* for the complainants.

*Mr. Ephraim Cutter,* for the defendants.

HOWELL, V. C.

The bill in this case was filed to prevent the defendants from interfering with the complainants in the construction of a branch or Y to connect their railroad with a street railway operated by the Public Service Railway Company in Woodbridge avenue in Woodbridge township. The two complainants are severally incorporated under the General Railroad law of 1903. The Elizabeth and Trenton Railroad Company is under lease to the Public Service Railroad Company. They are operating a railroad over a private right of way between certain terminal points, and in so doing cross Woodbridge avenue near the point now in dispute at grade.

The street railway company was organized under the General Street Railway law of 1893, and its supplements and amendments.

The General Railroad law, under which the complainants were organized, by section 7, authorizes corporations formed under it to lay out their routes and file surveys and locations thereof in the office of the secretary of state. The section contains also this provision:

"The company may also from time to time after the filing of the survey of the route of the main line, and either before or after construction thereon, file surveys of the route and location of branches within the limits of any counties in or through which the main line may be located, and of any county adjoining such counties."

In pursuance of this authority the complainants, on December 17th, 1912, filed in the office of the secretary of state a survey and location of the branch or Y in question beginning in the middle of the right of way of the main line and upon the complainants' property and running on an easterly curve to Woodbridge avenue, continuing the curve in Woodbridge avenue, and ending at a point in the tracks of the street railway within the lines of the avenue.

It will thus be seen that the branch or Y in question begins on the complainants' own lands, extends upon and into Woodbridge avenue, but does not cross the avenue or in any manner reach the further side thereof.

The complainants sought and obtained from the board of public utility commissioners permission for the construction of connecting tracks between the tracks of the complainants and the tracks of the Public Service Railway Company, in Woodbridge avenue, over said Y, which permission is dated July 2d, 1914. No permission therefor was either sought or obtained from the township of Woodbridge or any other municipal authority.

When the permission of the public utilities board had been granted the complainants began the construction of the Y or branch in dispute. They were interfered with by the township committee of the township of Woodbridge and its police officers, whereupon they began this suit for the purpose of enjoining such interference. Upon the filing of the bill an order was made requiring the township and its officers to appear and show cause why they should not be enjoined from such interference, and temporarily restraining them therefrom, but reserving authority to the court in case the complainants should proceed with the construction of their tracks during the pendency of the order to make such further order as to the restoration of the then present conditions as might be thought proper. On the return day an injunction was ordered *pendente lite,* but subject to the power of the court to order a restoration of the conditions, if the same should be thought proper.

Being thus freed from interference by the defendants the complainants proceeded to finish the Y or branch in question and to connect its tracks with the tracks of the Public Service Railway Company, thus making a continuous line of track over which cars might be run from the line of the complainants and to and upon the line of the street railway company; and on the 3d or 4th day of July, 1914, the complainants began the operation of a line of cars from Newark to the point of junction between the tracks of the railroad companies with those of the railway company, and thence to Perth Amboy, making a continuous line from Newark to Perth Amboy. Advertisements were placed in the cars of the complainant companies calling attention to the fact that through cars were being run and operated over the lines of these companies to and from the city

of Perth Amboy. The passengers were not required to change cars at any point on the journey, and the cars were under the control of the same conductor and motorman throughout the whole journey, there being no break whatever at the point or place now in dispute.

The principal objection which is urged by the defendants to the construction in question is, as they allege, that there is no law in this state which permits cars operated by the railroad company formed under the act of 1903 to be operated over the line of a street railway company organized under the act of 1895 and its supplements. And it will be observed that this is exactly what is being done by the complainants in this case. They are operating their cars from Newark to Perth Amboy over their own line to the point of junction with the street railway company, and thence to Perth Amboy over the line of the street railway company, with nothing to indicate that there is any separation or division between the lines of the two companies.

A similar situation is found in the case of *State* v. *Atlantic City and Shore Railroad Co., 77 N. J. Law 465*. There a railroad company organized under the act of 1903 constructed its line so that it ran through Adriatic avenue. The Central Passenger Railroad Company, a street railway corporation, constructed its line in such manner as that its tracks met and were connected with the street railway line in Adriatic avenue, and there was a further connection with the West Jersey and Sea Shore Railroad Company. The shore company, so called, acquired all the bonds and stock (except qualifying shares) of the Central Passenger Railway Company, thus obtaining absolute control of the line of that company. It then proceeded to operate cars over the two lines, but without change of cars. There was, however, a fiction that at the point of junction the cars were delivered by the one company to the other. The attorney-general conceiving that this mode of operation of cars upon the lines of these two companies in the manner above stated was a usurpation of franchises, filed an information in the nature of a *quo warranto,* and the question of law arising in the case was presented on a demurrer to a plea to the information. Without going into the argument of Chancellor Pitney, who wrote

the opinion, it may be sufficient to say that it was held that the exercise by the shore company of the control that resulted from its ownership of the stock and bonds of the Central company, including the operation of its cars over the Central line and the agreement that was made for the continuance of such operation, constituted a usurpation of franchises by the shore company. In my opinion, this case is express authority for the position taken by the township as to the fundamental right of the complainants to operate their cars over the street railway lines, and I take it to have been decided that even though the incorporation papers of the complainants may have included such a right, such inclusion would confer no title upon them to operate their cars in that way, and that such operation would be a usurpation of franchises. If this position is correct then the construction of the branch or Y in question is wholly unauthorized by any law of this state, and the presence of its tracks and switches and other constructions in the street being unauthorized by law constitute a public nuisance which may be abated by the township by any lawful means. The authorities for the interference by the township committee to preserve and protect the highways under their control are found in *Hudson County* v. *Central Railroad,* '68 *N. J. Eq.* 507.

The result is that the bill must be dismissed and the complainants be directed to tear up the tracks and switches laid by them at the point in question so that the conditions which existed at the time of the filing of the bill may be restored.

The foregoing view of the case makes it unnecessary to discuss the other point submitted by the defendant.